Charles J. Stamler v. Commissioner.
Stamler v. Commissioner
Docket No. 109442.
United States Tax Court
1943 Tax Ct. Memo LEXIS 179; 2 T.C.M. (CCH) 531; T.C.M. (RIA) 43362; July 28, 1943
*179 Petitioner as the owner of an interest in mortgaged real estate had executed a bond to secure the payment of the mortgage indebtedness. In lieu of foreclosure petitioner deeded the property to the mortgagee and sustained a loss on his investment. Held, that the loss was a capital loss. Petitioner was the owner of stock in a corporation. In the taxable year distributions were made to petitioner and the other stockholders, whereupon no assets were left in the hands of the corporation. Held, the distribution was one in liquidation of the corporation and that petitioner's loss on his stock was a capital loss. Sydney A. Gutkin, Esq., for the petitioner. Robert S. Garnett, Esq., for the respondent. TYSON Memorandum Findings of Fact and Opinion The respondent determined a deficiency in income tax against the petitioner for the calendar year 1935 in the sum of $3,599.51. The first issue is whether a loss sustained by the petitioner, as one of the owners of mortgaged property, upon the voluntary conveyance of that property by those owners to the mortgagee in lieu of foreclosure was an ordinary loss deductible in full, or a capital loss, deductible only to the limited extent provided *180 in section 117 of the Revenue Act of 1934. The second issue is whether a loss sustained by the petitioner on stock owned by him in the Colonial Holding Company was an ordinary or a capital loss. Findings of Fact The petitioner whose principal office is in Elizabeth, New Jersey filed his return for the taxable year with the collector for the fifth district of New Jersey. He keeps his books on an accrual basis. The petitioner, a lawyer, owned a one-third interest in real estate located at 1122-1126 Elizabeth Avenue, Elizabeth, New Jersey and his brother who was also his law partner owned the remaining interest. The total cost of this property was $170,067.40, of which the petitioner paid one-third. Up to 1935 depreciation in the sum of $39,377.22 had been allowed by the respondent. Petitioner for 25 years had been buying and selling for himself numerous real properties. The Elizabeth Avenue property was subject to a mortgage held by the Union County Trust Company of Elizabeth, New Jersey in the original amount of $65,000. To guarantee payment of the mortgage the owners of the mortgaged property, including the petitioner, had, on January 3, 1928, given a bond in the sum of exceeding *181 $65,000. On February 20, 1935, the amount of this mortgage with accumulated interest thereon was $60,881.01. In 1935 the mortgage was in default as to interest and taxes. In the early part of January 1935 the president of the mortgagee discussed with petitioner his liability on his bond. After numerous conversations with representatives of the mortgagee, the owners, on January 23, 1935, executed a deed to the property in favor of the mortgagee, Union County Trust Company, in lieu of foreclosure. The consideration recited in the deed was "one dollar and other good and valuable considerations." This deed was recorded on February 19, 1935. The deed provided, inter alia: The parties of the first part [the owners] specifically represent and covenant that the unpaid principal due upon the bond and mortgage above referred to with accrued interest, taxes, and municipal liens represent the present fair market value of the premises, and that this deed is given to the party of the second part in lieu of its instituting foreclosure proceedings upon its mortgage, but it is the intention of the parties of the first part that this conveyance shall be absolute and convey the full, legal, indefeasible *182 title to the party of the second part and shall in nowise be deemed or taken to be as further security for the said indebtedness and is not and shall not be construed to be a mortgage in the form of a deed. [Brackets supplied.] No express provision was contained in the deed releasing petitioner from liability on his bond and he was not otherwise released from his entire liability on the bond by reason of the execution and delivery of the deed. Subsequently, on October 29, 1935, the petitioner conveyed a plot of land behind and contiguous to the mortgaged property to the mortgagee by a deed which recited as consideration, "one dollar and other good and valuable considerations." The mortgagee desired this additional property to facilitate the use of a loading platform in the rear of the mortgaged property and to provide parking space. In consideration for this deed the Union County Trust Company completely released petitioner from his personal liability under the bond. The petitioner deducted from gross income for 1935 the full amount of his share of the loss resulting from the transaction with the Union County Trust Company. The respondent treated such loss as a capital loss and *183 increased the petitioner's net income accordingly. In 1924 the petitioner purchased shares of stock in the Colonial Holding Company at a cost of $25,000. The principal asset of this company was real estate known as 796 Broad Street, Newark, New Jersey. This property was originally subject to a first and a second mortgage in the respective sums of $340,000 and $100,000. The second mortgage was subsequently cancelled, the petitioner advancing an additional $25,000 to the company in connection with such cancellation. During 1934 the tenants of 796 Broad Street, Newark, New Jersey started to move out, the income therefrom became insufficient to pay the taxes and interest on the mortgage, and the mortgagee commenced foreclosure proceedings. The foreclosure was completed in 1935 when a deed conveying the property to the purchaser was executed by the sheriff of Essex County, New Jersey. During 1934 and 1935 the officers, who were also apparently the only stockholders, of the Colonial Holding Company had cash of the company distributed to themselves in the form of loans. During 1935, $9,727.91 was so distributed and charged to loans receivable. Of the latter amount the petitioner received *184 $3,725.96 and never received any further amount from the corporation. The closing entry on the company's books on December 31, 1935, showed receivables (including the loans to its officers and stockholders) of $30,437.87, which amount was closed out by a journal entry debiting the capital stock account of the company and crediting loans receivable. No assets remained in the company after this closing entry. The Colonial Holding Company was not formally dissolved and no certificate of dissolution was filed. The petitioner on his income tax return for 1935 deducted $40,774.04 in respect to his investment in the Colonial Holding Company. The respondent disallowed that amount as an ordinary loss and treated it as a capital loss, recognizing 30% of one-half of the loss as an investment held for more than ten years and 40% of the other half of the loss as an investment held for more than seven years. Opinion TYSON, Judge: The first issue is whether the loss sustained by the petitioner upon the transfer of the mortgaged property to the mortgagee in lieu of foreclosure was an ordinary or a capital loss. The respondent in a statement attached to his deficiency notice, in effect, conceded *185 that the petitioner had sustained a loss as a result of this transaction, but determined that it was a capital loss. On numerous occasions, it has been held that a loss suffered by the mortgagor as a result of voluntarily transferring property to the mortgagee in lieu of foreclosure and in consideration of a release from personal liability for the mortgage debt is a "sale or exchange" within the meaning of § 117 of the Revenue Act of 1944 [1] or analogous sections of other Acts, and therefore is subject to the limitations provided in that section. ; certiorari denied, ; rehearing denied, ; ; certiorari denied, ; ; ; ; affirmed . The same principle is applicable to the instant *186 case where the petitioner-mortgagor gave additional consideration in order to secure a complete release of his personal liability on the bond which the mortgage secured. ;; and Cf. . The conveyance to the mortgagee of the mortgaged property by the owners, including petitioner, was a "sale or exchange" within the meaning of § 117. It was part of a transaction which was completed by the conveyance of the additional property. Accordingly, we sustain the respondent's determination that the loss sustained by the petitioner as a result of the transaction was a capital loss and therefore deductible only to the limited extent provided in that section. *187 Although it is not clear, the petitioner seems to contend: that the transfer of the mortgaged property and the later transfer of the additional property were two separate transactions; that the transfer to the mortgagee of the mortgaged property was an abandonment of that property; that for the transfer of the mortgaged property petitioner did not receive a release, even in part, of his personal liability on the bond, that release being received by the subsequent transfer of the additional property as the sole consideration therefor; and for those reasons there was no sale or exchange of the mortgaged property. We have held that the transfers of the mortgaged and additional properties were made in pursuance of one transaction, but even if it were conceded that they constituted two separate transactions as contended by petitioner, we are of the opinion that the transfer of the mortgaged propery in and of itself constituted a sale or exchange. The petitioner was personally liable for the mortgage indebtedness as a result of having given a bond to guarantee the payment of such indebtedness. Had the property been sold under foreclosure to the mortgagee for less than the mortgage indebtedness *188 the liability of petitioner on his bond would have been reduced at least by the amount brough at foreclosure, ; on the theory that the mortgagee would have received that amount in property on the indebtedness. When, as here, the mortgaged property was transferred to the mortgagee in lieu of foreclosure, the amount which the mortgagee could have recovered in an action on the bond, was, on a like theory, reduced, there being nothing in the record showing an agreement to the contrary, by the fair value of the mortgaged property transferred which although not shown in any definite amount is nevertheless indicated to have been in a very substantial amount. Petitioner by his conveyance of the mortgaged property thus received such a substantial reduction in his personal liability on his bond as constituted consideration for that transfer sufficient to render it a sale or exchange under the applicable revenue statute. In holding as we have that the transfer of the mortgaged property was a sale or exchange whether considered with the transfer of the additional property as one transaction, or as a separate transaction, we have not overlooked *189 the testimony of petitioner to the effect that in connection with making the deed to the mortgaged property there was no understanding for his release from liability on his bond; that the sole consideration for his release from that liability, as he understood it, was the conveyance of the additional property; and that the release from liability on his bond was not "wholly or in part" in consideration of his deeding the mortgaged property to the mortgagee. All this testimony of petitioner was embraced in questions of his attorney with regard to which petitioner made categorical answers. When taken in connection with all the facts of record, we think a reasonable construction of petitioner's testimony that there was no understanding at the time of the execution of the deed to the mortgaged property for the release of petitioner from his personal liability is that there was no understanding to completely release him from all such liability. With regard to petitioner's other testimony, we think that it amounted merely to conclusions as to the legal effect of the transfers. We cannot believe that petitioner who is not shown by the record to have been insolvent would have voluntarily *190 conveyed a valuable piece of real estate and abandoned same without obtaining a reduction of his personal liability to the extent of the value of the property conveyed; and especially since petitioner is an attorney having wide experience in buying and selling real estate for himself and would, or should have, known the legal effect of such a conveyance in reducing his personal liability. The petitioner in support of his position that his loss on the mortgaged property was an ordinary loss and deductible in full cites as authorities, ; , and . Those cases are wholly inapplicable. In all of them the mortgagor was not personally liable for the mortgage indebtedness as was petitioner, so that the conveyance of the mortgaged property by him to the mortgagee did not result as here, in the release of any personal liability. Since, therefore, no consideration passed to the mortgagor in those cases for the transfer of the mortgaged property, it was held that no "sale or exchange" took *191 place. The second issue is whether a loss sustained with respect to stock of the Colonial Holding Company was an ordinary or capital loss. The petitioner contends that the loss was due to the worthlessness of this stock and therefore is fully deductible. On his income tax return he deducted $40,774.04, the difference between $50,000, the cost of the stock, and $9,225.96, the amount which presumably he received from the company in 1934 and 1935. The respondent determined that the loss was a capital loss and thus was subject to the limitations provided in § 117 of the Revenue Act of 1934, supra. In support of his determination the respondent contends that those limitations apply because the distribution by the Colonial Holding Company of its only assets other than the mortgaged property to its officer-stockholders during 1934 and 1935 represented liquidating dividends and therefore should be treated as in full payment in exchange for stock within the meaning of § 115(c) of the Revenue Act of 1934. [2]
*192 Here the record shows that the officer-stockholders of the Colonial Holding Company had in 1935 distributed to themselves cash of that company amounting to $9,727.21 and in 1934 cash in an undisclosed amount at times when foreclosure of the company's principal asset was imminent, or in progress, or had been completed. The company at the time of these distributions treated the distributions as loans receivable. However, at the end of 1935 after the foreclosure proceedings had been completed, the company on its books closed out the loans receivable account by charging the capital stock account with the amount of the so-called loans. This we think conclusively evidenced an intention (which was carried out) on the part of both the company and its stockholders, including the petitioner, to distribute the only asset, "loans receivable", to themselves in complete liquidation of the company. By the end of 1935 when the entries were made the real estate of the company, the ownership and operation of which was the only apparent reason for the company's existence, had been lost through foreclosure. The normal and necessary result of the distributions to the stockholders, therefore, was a winding *193 up of the corporate business. It is true that the Colonial Holding Company did not adopt a resolution of dissolution or liquidation, that the company was not formally dissolved, and that the stockholders continued to hold the stock after the distribution. But those factors are not vital in determining whether there was a liquidation within the meaning of § 115(c), supra. , affirmed ; and authorities cited therein. Cf. , affirmed . Accordingly, we hold that there was a distribution in liquidation within the meaning of § 115(c), supra, and sustain the respondent's determination. Decision will be entered for the respondent. Footnotes
1. SEC. 117. CAPITAL GAINS AND LOSSES. (a) General Rule. - In the case of a taxpayer, other than a corporation, only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net income: * * * * *
40 per centum if the capital asset has been held for more than 5 years but not for more than 10 years; 30 per centum if the capital asset has been held for more than 10 years. * * * * *
(d) Limitation on Capital Losses. - Losses from sales or exchanges of capital assets shall be allowed only to the extent of $2,000 plus the gains from such sales or exchanges. * * *↩
2. SEC. 115. DISTRIBUTIONS BY CORPORATIONS. * * * * *
(c) Distributions in Liquidation. - Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. * * *↩